MICHAEL N. WESTHEIMER, SBN 178938
michael.westheimer@ogletree.com
JARED L. PALMER, SBN 287974
jared.palmer@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:  415.442.4810
Facsimile:  415.442.4870

Attorneys for Defendant
PRATT (ROBERT MANN PACKAGING), LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN CHAVEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>       Plaintiffs,<br><br>   vs.<br><br>PRATT (ROBERT MANN PACKAGING), LLC, a Delaware Company,<br><br>       Defendant. | Case No.:    5:19-cv-719<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT PRATT (ROBERT MANN PACKAGING), LLC**<br><br>[28 U.S.C. §§ 1332, 1441, 1446 and 1453 (Class Action Fairness Act)] |

**PLEASE TAKE NOTICE** that Defendant PRATT (ROBERT MANN PACKAGING), LLC ("Defendant" or the "Company") removes this action from the Superior Court of the State of California for the County of Monterey to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453 (the Class Action Fairness Act ("CAFA") because: (1) Plaintiff JUAN CHAVEZ ("Plaintiff") is a "citizen of a State different from any defendant," (2) "the number of members of all proposed plaintiff classes in the aggregate is" over 100, and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  All CAFA requirements are satisfied.

These facts were true when Plaintiff filed his Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal.  Removal jurisdiction is appropriate as detailed more fully below.

**I.    THE STATE COURT ACTION**

1.    On January 8, 2019, Plaintiff filed his Class Action Complaint for Damages ("Complaint") in the Superior Court of the State of California for the County of Monterey, Case No. 19CV000002 ("Action"), against defendant Pratt (Robert Mann Packaging), LLC, a Delaware Company; and Does 1 through 100, inclusive.  In the Complaint, Plaintiff asserts claims on his own behalf and on behalf of a putative class for:

(1)    Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime);

(2)    Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums);

(3)    Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums);

(4)    Violation of California Labor Code §§ 1194 and 1197 (Unpaid Minimum Wages);

(5)    Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid);

(6)    Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements);

///

(7) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); and

(8) Violation of California Business & Professions Code § 17200, *et seq.*

2. On January 9, 2019, Plaintiff served Defendant with a copy of the Summons and Complaint, and Civil Case Cover Sheet. True and correct copies of all documents served on Defendant are attached hereto as **Exhibit A**.

## II.     REMOVAL IS TIMELY

3. Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), based on the service of the Complaint on January 9, 2019, Defendant's deadline to remove is February 8, 2019. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This Notice of Removal is timely.

## III.     REMOVAL IS PROPER UNDER CAFA

4. The Action is removable under CAFA given the allegations and claims in the Complaint. The Complaint asserts eight causes of action for: (1) failure to pay overtime; (2) failure to provide compliant meal periods; (3) failure to provide compliant rest periods; (4) failure to pay minimum wage; (5) failure to timely pay wages at termination; (6) failure to provide accurate written wage statements; (7) failure to reimburse for all necessary business-related expenses and costs; and (8) unfair competition.

5. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

6. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from one of the Defendants, the number of members in Plaintiff's proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000,

exclusive of interest and costs.

### A. CAFA's Minimal Diversity of Citizenship Requirement Is Satisfied

7. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. §§ 1332(d)(2), 1453(a), (b); *Rodgers v. Central Locating Service, Ltd*., 412 F. Supp. 2d 1171, 1174-79 (W.D. Wa. 2006).

8. Defendant is informed and believes, based on Plaintiff's pleading in the Complaint, that at all relevant times, Plaintiff was, at the time of the filing of the Action, and still is, a resident of the State of California. (Complaint, ¶¶ 5, 16.) Members of the putative class, who are or were employed in California, are presumed to be primarily citizens of the State of California. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

9. The citizenship of a limited liability company for diversity jurisdiction purposes is the citizenship of its members. *See Fadal Machining Ctrs., LLC v. Mid-Atlantic CNC, Inc.*, 464 Fed. Appx. 672, 673 (9th Cir. 2012) ("For purposes of diversity jurisdiction, a limited liability corporation is a citizen of all states where its members are citizens."); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."); *Cebrian v. Robert H. Ballard Rehab. Hosp*., ED CV 13-2149 PA (FFMx), 2013 U.S. Dist. LEXIS 173184, at *2-3 (C.D. Cal. Dec. 6, 2013) (collecting cases); *Long v. Forty Niners Football Co. LLC*, No. C-13-2919 EMC, 2013 U.S. Dist. LEXIS 152438, at *5-6 (N.D. Cal. Oct. 23, 2013) (noting that to determine citizenship of an unincorporated entity the citizenship must be traced up through the layers of partners or members); *see also Hicklin Eng'g., L.C. v. Bartell,* 439 F.3d 346, 348 (7th Cir. 2006) (noting that to determine an LLC's citizenship "[a] federal court thus needs to know each member's citizenship, and if necessary each member's members' citizenships.").

10. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court established the proper test for determining the principal place of business of a corporation for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 130 S.

1  Ct. 1181 (2010).  The Court held that "'principal place of business' [as contained in section

2  1332(c)] is best read as referring to the place where a corporation's officers direct, control, and

3  coordinate the corporation's activities."  *Id*. at 1184, 1192.  The Court further clarified that the

4  principal place of business was the place where the corporation "maintains its headquarters --

5  provided that the headquarters is the actual center of direction, control and coordination."  *Id*.  A

6  company's "'principal place of business' refers to the corporation's "nerve center."  *Id*. at 1192.

7  The "nerve center" is normally where the corporation maintains its headquarters.  *Id.; see also*

8  *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2009) (stating that an unincorporated

9  association is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the

10 state of its "principal place of business," with the state of the principal place of business being

11 where a substantial predominance of corporate operations occur or where the majority of the

12 partnership's executive and administrative functions are performed).

13       11.    Defendant is a single-member limited liability company, and its sole member is

14 Pratt Corrugated Holdings, Inc.  (Declaration of Jonathan G. Nelson in Support of Defendant's

15 Notice of Removal ("Nelson Decl."), ¶¶ 2-3.)  At all relevant times, Pratt Corrugated Holdings,

16 Inc. has been a corporation incorporated under the laws of Delaware with its principal place of

17 business in Georgia.  (Nelson Decl., ¶ 3.)  As such, Pratt Corrugated Holdings, Inc.'s principal

18 place of business is in the State of Georgia, where its corporate headquarters are located and where

19 its high-level corporate officers, who are responsible for the direction, control, and coordination of

20 its activities, are located.  (Nelson Decl., ¶ 3.)  Since Defendant's citizenship as a limited liability

21 company is the citizenship of its members, Defendant is a citizen of Delaware and Georgia for

22 diversity purposes, and is not a citizen of the State of California.

23       12.    For the purposes of removal, courts disregard the citizenship of fictitiously named

24 "doe" defendants.  28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on

25 the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued

26 under fictitious names shall be disregarded.").

27       13.    Based on the foregoing, diversity of citizenship is established because, at all

28 relevant times, Plaintiff has been and is a citizen of California, and Defendant has been and is a

1  citizen of Georgia and Delaware.  28 U.S.C. § 1332(d)(2)(A).

2  **B.     CAFA's Class Size Requirement Is Satisfied**

3       14.    Plaintiff's Complaint alleges a putative class comprised of "[a]ll current and former California-based (i.e., currently 'residing' in California with the intent to remain in California indefinitely) hourly-paid or non-exempt employees (either directly or through a staffing agency or labor contractor) providing services to Defendant[] within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment."  (Complaint, ¶ 12.)

       15.    The Company has directly employed approximately 263 non-exempt hourly employees in California within the time period of January 8, 2015 to the present.  (Quintero Decl.¶ 2.)  Another approximately 1,183 temporary workers employed through staffing agencies have worked at the Company in California within the time period of January 8, 2015 to the present.  (Quintero Decl.¶ 2.)

       16.    Plaintiff pleads in the Complaint that: "[t]he class members are so numerous that joinder of all class members is impractical."  (Complaint, ¶ 14.a.)

       17.    Thus, CAFA's size requirement is satisfied, and this is a class action pursuant to 28 U.S.C. § 1332(d).

       **C.     CAFA's Requisite Amount In Controversy Is Satisfied**

       18.    CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000.  28 U.S.C. § 1332(d).

       19.    Plaintiff has not alleged a specific amount in controversy in the Complaint.  However, the failure of the operative complaint to specify the total amount of monetary relief sought by Plaintiff does not deprive this Court of jurisdiction.  *White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W. Va. 1994) (observing that defendant may remove suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining . . . to place a specific dollar claim upon its claim.").  In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a

1  preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional
2  minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  To do so,
3  the removing defendant must "produce underlying facts showing only that it is *more likely than not*
4  that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead
5  in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL
6  1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

7        20.     In considering the evidence submitted by the removing defendant, the Court must
8  "look beyond the complaint to determine whether the putative class action meets the [amount in
9  controversy] requirements" adding "the potential claims of the absent class members" and
10 attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct.
11 1345 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007).
12 Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the
13 complaint, a court must assume that the allegations of the complaint are true and that a jury will
14 return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus.,*
15 *Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo*
16 *Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL
17 1302504, at *3.

18       21.     The Complaint defines Plaintiff's claims for (1) failure to pay overtime; (2) failure
19 to provide compliant meal periods; (3) failure to provide compliant rest periods; (4) failure to pay
20 minimum wage; (5) failure to timely pay wages at termination; (6) failure to provide accurate
21 written wage statements; (7) failure to reimburse for all necessary business-related expenses and
22 costs; and (8) unfair competition, as being brought on his own behalf and on behalf of "[a]ll current
23 and former California-based . . . hourly-paid or non-exempt employees (either directly or through a
24 staffing agency or labor contractor) providing services to Defendant[] within the State of California
25 at any time during the period from four years preceding the filing of this Complaint to final
26 judgment." (Complaint, ¶¶ 12, 42-98.)

27       22.     Here, Plaintiff seeks the recovery of meal and rest period penalties, unpaid wages,
28 including overtime, wage statement penalties, waiting time penalties, and attorneys' fees on behalf

of himself and the putative class that satisfies the $5,000,000 threshold for CAFA removal.  *See* 28 U.S.C. § 1332(d).[1]

### a.   Relevant Data

23.   The Company has directly employed approximately 263 non-exempt hourly employees in California within the time period of January 8, 2015 to the present.  (Quintero Decl.¶ 2.)  Another approximately 1,183 temporary workers employed through staffing agencies have worked at a Company location in California within the time period of January 8, 2015 to the present.  (Quintero Decl.¶ 2.)

24.   During the time period of January 8, 2015 to the present, the shift lengths for hourly, non-exempt Company employees and temporary workers working at each Company location in California typically are 8, 10, or 12 hours, and they typically work at least five days during a workweek.  (Quintero Decl., ¶ 3.)

25.   Hourly, non-exempt Company employees and temporary workers working at each Company location in California are paid every two weeks, whether employed by the Company or through a staffing agency.  (Quintero Decl., ¶ 4.)  During the time period of January 8, 2018 to February 7, 2019, at least 4,456 wage statements were issued to current and former hourly, non-exempt Company employees in California.  (Quintero Decl., ¶ 4.)  During the time period of January 8, 2018 to February 7, 2019, at least 3,358 wage statements were issued to current and former hourly, non-exempt temporary workers working at a Company location in California.  (Quintero Decl., ¶ 4.)

26.   The average hourly rate for hourly, non-exempt Company employees working at each Company location in California was approximately $16.59 in 2015, $16.86 in 2016, $17.34 in 2017, $17.78 in 2018, and $18.56 in 2019.  (Quintero Decl., ¶ 5.)  The hourly rate for hourly, non-exempt temporary workers working at a Company location in California since January 8, 2015 has

---

[1]   In alleging the amount in controversy for CAFA removal, Defendant does not concede in any way that Plaintiff's allegations in the Complaint are accurate or meritorious, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint.  Defendant further does not concede that any or all putative class members are entitled to any recovery, or that they are appropriately included in the Action.

always exceeded California's minimum wage for the applicable time period. (Quintero Decl., ¶ 5.) The average hourly rate for non-exempt, hourly temporary workers working at each Company location in California was approximately $9.90 in 2015, in excess of $10.00 in 2016, in excess of $11.00 in 2017, in excess of $12.00 in 2018, and in excess of $13.00 in 2019. (Quintero Decl., ¶ 5.) Plaintiff's hourly rate was $22 throughout his employment with the Company from August 2, 2016 to October 16, 2017. (Quintero Decl., ¶ 5.)

27. From January 8, 2015 to the present, the Company's hourly, non-exempt employees working at each Company location in California have worked a combined total of at least 26,752 workweeks. (Quintero Decl., ¶ 6.) From January 8, 2015 to the present, hourly, non-exempt temporary workers working at each Company location in California have worked a combined total of at least 14,012 workweeks. (Quintero Decl., ¶ 6.)

28. For hourly, non-exempt Company employees who have worked at a Company location in California during the time period of January 8, 2016 to the present, at least 85 of them no longer work for the Company. (Quintero Decl., ¶ 7.) For hourly, non-exempt temporary workers who have worked at a Company location in California during the time period of January 8, 2016 to the present, at least 714 of them no longer work for the Company. (Quintero Decl., ¶ 7.)

### b. Meal Period Penalties

29. Plaintiff alleges "[a]s a pattern and practice, during the relevant time period set forth herein, Defendant[] failed to provide the requisite uninterrupted and timely meal and rest periods to Plaintiff and other class members." (Complaint, ¶ 35.) Plaintiff further alleges "[a]s a pattern and practice, during the relevant time period set forth herein, Defendant[] intentionally and willfully required Plaintiff and other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." (Complaint, ¶ 58.) Plaintiff also alleges that Defendant has a pattern and practice of requiring him and other putative class members to work in excess of six hours without a compliant meal period before the fifth hour of work. (Complaint, ¶ 57.) Additionally, Plaintiff alleges that Defendant has a pattern and practice of requiring putative class members scheduled to work no more than six hours and who did not waive their meal periods by mutual consent to work

more than five hours without a compliant meal period.  (Complaint, ¶ 56.)

30. "Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiff and other class members are entitled to recover from Defendant[] one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided." (Complaint, ¶ 61.)  Plaintiff further alleges that during the relevant time period, Defendant failed to pay him and other putative class members the meal premium due pursuant to California Labor Code section 226.7.  (Complaint, ¶ 59, *see also* ¶¶ 26-27)

31. Based on the above allegations, Plaintiff contends the Company has had a pattern and practice of not providing him and the putative class with compliant meal periods and not compensating them with meal period premiums.  Based on the relevant data, the potential meal period premiums in controversy for the Company's hourly, non-exempt employees working at a Company location in California, assuming just one alleged meal period violation per week, at an average hourly rate of only $17 per hour, is at least **$454,784** (26,752 work weeks * $17 per hour).  The potential meal period premiums in controversy for hourly, non-exempt temporary workers working at a Company location in California, assuming just one alleged meal period violation per week at an average hourly rate of only $10 per hour, is at least another **$140,122** (14,012 work weeks * $10 per hour).  The amount in controversy for alleged meal period premiums is actually larger based on the Complaint.  This calculation is a conservative estimate.

        c. **Rest Period Penalties**

32. Plaintiff alleges "Defendant[] failed to provide Plaintiff and other class members the required rest and meal periods during the relevant time period as required under the Industrial Welfare Commission Wage Orders and thus they are entitled to any and all applicable penalties." (Complaint, ¶ 26, *see also* ¶ 68.)

33. Plaintiff further alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, Defendant[] required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked.  (Complaint, ¶ 66.)  Plaintiff also alleges that "Defendant[] willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the

other class members the full rest period premium for work performed during rest periods." (Complaint, ¶ 67.)

34. "Pursuant to the applicable IWC Wage Orders and California Labor Code section 226.7(b), Plaintiff and the other class members are entitled to recover from Defendant[] one additional hour of pay at the employees' regular hourly rate of compensation for each work day that the rest period was not provided." (Complaint, ¶ 70.)

35. Based on the above allegations, Plaintiff contends the Company has had a pattern and practice of not providing him and the putative class with compliant rest periods and not compensating them with rest period premiums. Based on the relevant data, the potential rest period penalties in controversy for the Company's non-exempt, hourly employees working at a Company location in California, assuming just one alleged meal period violation per week, at an average hourly rate of only $17 per hour, is at least **$454,784** (26,752 work weeks * $17 per hour). The potential rest period premiums in controversy for hourly, non-exempt temporary workers working at a Company location in California, assuming just one alleged rest period violation per week at an average hourly rate of only $10 per hour, is at least another **$140,122** (14,012 work weeks * $10 per hour).

### d. <u>Failure to Pay Final Wages Timely</u>

36. Plaintiff alleges that Defendant had a pattern and practice of failing to pay him and other putative class members their wages at discharge or termination. (Complaint, ¶¶ 30, 37, 78-79.) Plaintiff also alleges that "California Labor Code section 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days." (Complaint, ¶ 80.) Plaintiff further alleges that he and other members of the putative class are entitled to recover from Defendant "the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Complaint, ¶ 81.) The statute of limitations for penalties under California Labor Code section 203 is three years. *See* Code of Civ. Proc. § 338(a).

37. Based on personnel and payroll records for the Company's hourly, non-exempt employees who have worked at a Company location in California during the time period of January 8, 2016 to the present, at least 85 of them no longer work for the Company. (Quintero Decl., ¶ 7.) Based on personnel and payroll records for hourly, non-exempt temporary workers who have worked at a Company location in California during the time period of January 8, 2016 to the present, at least 714 of them no longer work for the Company. (Quintero Decl., ¶ 7.)

38. Based on the relevant data, the potential waiting time penalties in controversy for the Company's non-exempt, hourly employees working at a Company location in California at an average hourly rate of just $17 per hour is at least **$346,800** ($17 hourly rate of pay upon termination * 8 for estimated 8-hour workday * 30 for waiting time penalty cap * 85 former employees during relevant time period). Based on the relevant data, the potential waiting time penalties in controversy for hourly, non-exempt temporary workers who have worked at a Company location in California at an average hourly rate of just $10 per hour is at least **$1,713,600** ($10 hourly rate of pay upon termination * 8 for estimated 8-hour workday * 30 for waiting time penalty cap * 714 former temporary workers during the relevant time period).

### e. **Failure to Provide Complete or Accurate Wage Statements**

39. Plaintiff alleges that as a pattern and practice, Defendant failed to provide complete or accurate wage statements to him and other putative class members. (Complaint, ¶¶ 38, 84.) Specifically, "[t]he deficiencies include, but are not limited to: the failure to include the total number of hours worked." (Complaint, ¶ 84.)

40. Pursuant to Labor Code section 226(e), Plaintiff and members of the putative class can recover fifty dollars ($50) for the initial pay period within the applicable limitations period in which a violation of Labor Code section 226 occurred and one hundred dollars for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) per employee. Cal. Lab. Code § 226(e). The statute of limitations for a claim for statutory penalties under section 226 is one year. *See* Cal. Code Civ. Proc. § 340(a). Putative class members are paid on a bi-weekly pay cycle every two weeks during their employment. (Quintero Decl., ¶ 4.) During the time period of January 8, 2018 through February 7,

2019, at least 7,823 wage statements were issued to 528 current and former hourly, non-exempt Company employees and temporary workers working at Company locations in California. (Quintero Decl., ¶ 4.)  Thus, according to Plaintiff's allegation that the Company failed to provide complete or accurate wage statements, the putative class is entitled to recover at least the following: ([528 initial wage statements * $50 penalty ] + [7,295 subsequent wage statements * $100 penalty]) = **$755,900**.

### f.  Attorneys' Fees

41.  Plaintiff seeks to recover attorneys' fees on behalf of the putative class.  (Complaint, ¶¶ 50, 74, 98; Prayer for Relief ¶ 8, 15, 26, 42, 46.)  Defendant denies that Plaintiff is entitled to recover any attorneys' fees; however, attorneys' fees may properly be included in determining the amount in controversy.  *See, e.g.*, *Lowdermilk v. US Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (holding that statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

42.  In class action litigation, courts have granted attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount.  *See, e.g.*, *Hanlon v. Center for Auto Safety*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%).  Accordingly, including an attorneys' fee calculation of 25% is reasonable when calculating the amount in controversy.  *See, e.g.*, *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendants "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, Case No.: 11-CV-5500 YGR, 2012 U.S. Dist. LEXIS 27215, at *20-21 (N.D. Cal. March 1, 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a

1  benchmark award for attorney fees.'"). Twenty-five percent of the total potential award for just the
2  limited claims outlined above is **$1,001,528**. A potential fee award of thirty-three percent for the
3  limited claims outlined above would raise this number to **$1,322,016.96**. This number would, of
4  course, be much larger if all claims Plaintiff is pursuing were included in the potential recovery.

        **g.**      **Summary of Amount in Controversy**

6      43.     As detailed above, the amount in controversy for a conservative estimate of only
7  some of Plaintiff's class claims totals at least **$5,007,640 ($594,906 + $594,906 + $2,060,400**+
8  **$755,900 + $1,001,528**), exceeding the jurisdictional minimum under 28 U.S.C. § 1332(d).

9      44.     The Complaint satisfies the requisite amount of controversy for removal under
10 CAFA *without* taking into account that Plaintiff also has vaguely pled other claims seeking
11 additional recoveries that further increase the amount in controversy. (1) Plaintiff pleads a vague
12 claim that Defendant had a pattern and practice of failing to pay overtime wages owed to Plaintiff
13 and the putative class members in violation of California Labor Code sections 510 and 1198 and
14 the applicable IWC Wage Order. (Complaint, ¶¶ 48-49.) (2) Plaintiff pleads a vague claim that
15 Defendant had a pattern and practice of failing to pay the minimum wage to Plaintiff and the
16 putative class members in violation of California Labor Code sections 1194 and 1197, and
17 additionally seeks to recover liquidated damages and interest on that claim pursuant to California
18 Labor Code section 1194.2. (Complaint, ¶¶ 73-75.) (3) Plaintiff pleads a vague claim that
19 Defendant failed to reimburse Plaintiff and the putative class members for necessary business-
20 related expenses and costs pursuant to California Labor Code sections 2800 and 2802. (Complaint,
21 ¶¶ 90-91.) These additional claims easily increase the amount in controversy by tens or hundreds
22 of thousands of dollars.

23     45.     In addition, Plaintiff seeks to recover punitive damages. (Complaint, Prayer for
24 Relief ¶ 41.) Although Defendant does not concede that punitive damages are recoverable in this
25 Action, Plaintiff's prayer for punitive damages further increases the amount in controversy.
26 *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785 (9th Cir. 1963) (punitive damages
27 are included in calculating the amount in controversy). *In State Farm Mut. Automobile Ins. Co. v.*
28 *Campbell*, 538 U.S. 403, 425 (2003), the United States Supreme Court held that the longstanding

historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "single-digit multipliers are more likely to comport with due process."

46. Defendant has provided a conservative estimate establishing the amount in controversy in this Action exceeds the CAFA jurisdictional threshold. Should Plaintiff identify any basis to contest this, Defendant can and will supplement this Notice of Removal to include estimates of additional amounts in controversy based on the other allegations in the Complaint identified above.

## IV. VENUE IS PROPER

47. The Superior Court of the State of California for the County of Monterey is located within the territory of the United States District Court for the Northern District of California. 28 U.S.C. § 84(a). Venue is proper in this Court because it is the district and division embracing the place where the Action was pending before removal. 28 U.S.C. § 1441(a).

## V. SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446

48. As discussed above, Plaintiff served Defendant with a copy of the Summons and Complaint, and Civil Case Cover Sheet. A true and correct copy of these documents are attached as **Exhibit A**.

49. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal was filed within 30 days after the effective date of service on Defendant on January 9, 2019.

50. As required by 28 U.S.C. §1446(d), Defendant will promptly file a Notice to Adverse Parties of Removal of Action to the United States District Court in Superior Court of the State of California for the County of Monterey.

51. A copy of the original Notice of Removal will be filed with the Superior Court of the State of California for the County of Monterey.

## VI. CONCLUSION

52. Because jurisdiction is proper under 28 U.S.C. §§ 1332 and 1453, Defendant respectfully requests that this Court exercise its removal jurisdiction over this action.

53. If this Court has a question regarding the propriety of this Notice of Removal,

1  Defendant requests it issue an Order to Show Cause so it may have an opportunity to more fully
2  brief the Court on the basis for this removal.
3       WHEREFORE, Defendant removes the above-entitled action to United States District
4  Court for the Northern District of California.

5  DATED:  February 8, 2019                    OGLETREE, DEAKINS, NASH, SMOAK &
                                               STEWART, P.C.
6
7
8                                              By: */s/ Jared L. Palmer*
                                                   MICHAEL N. WESTHEIMER
                                                   JARED L. PALMER
9
10                                             Attorneys for Defendant
                                               PRATT (ROBERT MANN PACKAGING), LLC
11
12                                                                              37310714.1