UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CHAVEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>PRATT (ROBERT MANN PACKAGING), LLC,<br><br>    Defendant. | Case No. 19-cv-00719-NC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO SUPERIOR COURT**<br><br>Re: Dkt. Nos. 10, 17 |

Plaintiff Juan Chavez brought eight class-action claims for California labor code violations against defendant Pratt in Monterey County Superior Court. Dkt. No. 1, Ex. A (Complaint). Pratt removed the action to federal court under the Class Action Fairness Act. Dkt. No. 1. Chavez moves to remand the case back to state court. Dkt. No. 17. Pratt moves to compel arbitration of Chavez's individual claims, and to dismiss or stay his class claims pending that arbitration, under the Federal Arbitration Act. Dkt. No. 10. Because the $5 million amount in controversy required by CAFA is not satisfied, the motion to remand is GRANTED. Because this Court lacks jurisdiction over this case, it does not address the motion to compel arbitration.

**I. Background**

    **A. Factual Background**

Chavez worked for Pratt as an hourly-paid, non-exempt employee from August 2016 to October 2017. Compl. ¶ 17. Chavez's complaint alleges a putative class of all

current and former California employees of Pratt, consisting of 263 hourly employees and 1,183 temporary workers. Dkt. No. 10, Att. 2 (Declaration of Dalia Quintero), ¶ 2. Chavez and the putative class members are residents of California. Complaint ¶ 5. Pratt is an LLC; its parent company was incorporated in Delaware and its principal place of business is in Georgia, so Pratt is a citizen of Delaware and Georgia for jurisdictional purposes. Dkt. No. 4 (Declaration of Jonathan G. Nelson) ¶ 3.

Chavez alleges that Pratt failed to compensate him and other class members for all hours worked, missed meal periods, and missed rest breaks. Compl. ¶ 18. This failure to compensate included not receiving overtime wages, not receiving at least minimum wage, not receiving an additional hour of pay when a meal period or rest period was missed, not paying wages owed at discharge or resignation, not creating complete and accurate wage statements, and not keeping complete and accurate payroll records. *Id*. ¶ 25–41.

When he started working at Pratt, Chavez signed an arbitration agreement. Quintero Decl., Ex. B (Arbitration Agreement).

### B. Procedural Background

Chavez filed suit in Monterey County Superior Court with eight causes of action: (1) violation of California Labor Code §§ 510 and 1198 – unpaid overtime; (2) violation of California Labor Code §§ 226.7 and 512(a) – unpaid meal period premiums; (3) violation of California Labor Code § 226.7 – unpaid rest period premiums; (4) violation of California Labor Code §§ 1194 and 1197 – failure to pay minimum wage; (5) violation of California Labor Code §§ 201 and 202 – failure to pay wages owed upon discharge or resignation; (6) violation of California Labor Code § 226(a) – failure to provide complete and accurate wage statements; (7) violation of California Labor Code §§ 2800 and 2802 – failure to reimburse for necessary expenditures; and (8) violation of California Business & Professions Code §§ 17200 – unlawful business practices. *Id*. ¶¶ 42–98. Chavez seeks attorneys' fees and punitive damages as well as the statutory damages applicable to the violations alleged. *Id*. ¶¶ 8, 15, 26, 41, 42, 46.

Pratt removed the action to this Court under CAFA. Dkt. No. 1.

Because this Court's jurisdiction should be determined first and foremost, this Order addresses the motion to remand before addressing the motion to compel arbitration.

## II. Motion to Remand

### A. Legal Standard

The Class Action Fairness Act provides that U.S. district courts have original jurisdiction over class actions when (1) the proposed class has more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy in the aggregate exceeds $5 million. 28 U.S.C. § 1332(d)(2); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). When a defendant seeks removal from state to federal court under CAFA, it must file a notice containing a short and plain statement of the grounds for removal. 28 U.S.C. § 1446(a). The notice must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014).

If a defendant makes a good faith allegation that the amount in controversy exceeds $5 million, the court should accept that allegation unless it is challenged. *Id.* at 553–55. If a plaintiff challenges the defendant's alleged amount in controversy, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)). This proof comes in the form of "summary judgment-type evidence." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Calculations must be made in good faith and be supported by evidence in the record. *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1115 (C.D. Cal. 2010). The defendant need not conduct a fact-specific inquiry into the ultimate questions of the litigation and, in so doing, try the case for the plaintiffs. *Bryan v. Wal-Mart Stores, Inc.*, No. 08-5221-SI, 2009 WL 440485, at *3 (N.D. Cal. Feb. 23, 2009). There is no antiremoval presumption in cases invoking CAFA. *Dart Cherokee*, 135 S. Ct. at 554.

### B. Analysis

Here, Pratt's notice of removal alleges that (1) the class includes over 100 members,

(2) minimal diversity is satisfied, and (3) the amount in controversy exceeds $5 million. Dkt. No. 1 at 5–6. Chavez does not challenge that the class size is over 100 members or that minimal diversity is satisfied. The first two requirements for CAFA are therefore met. Chavez opposes Pratt's calculation of the amount in controversy, so the question before the Court is whether Pratt has established by a preponderance of the evidence that the amount in controversy exceeds $5 million.

To meet its burden to show that the amount of controversy is over $5 million, Pratt provides a calculation of approximate meal and rest period penalties, unpaid final wages, wage statement penalties, unpaid overtime, minimum wage violations, and attorney's fees totaling $5,007,640. Dkt. No. 1, ¶ 43. The data used in these calculations is established in a declaration of its Human Resources Manager, Dalia Quintero. Dkt. No. 5. Chavez challenges most of Pratt's calculations, but does not submit any evidence of his own to show that different calculations are supported by a preponderance of the evidence. Dkt. No. 17.

### 1. Meal and Rest Penalties

California Labor Code § 226.7 requires that an employer pay an additional hour of pay anytime it fails to provide a meal or rest period. Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods. *See, e.g., Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (noting that a 20% rate is routinely applied in the Central District); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding that, where a plaintiff alleged a "uniform practice" of meal and rest period violations, a 60% rate was reasonable); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (holding that a weekly rate was a reasonable calculation when the plaintiff alleged a "policy or practice" of meal and rest break violations); *Arreola v. Finish Line*, 2014 WL 6982571, No. 14-cv-03339-LHK at *4 (N.D. Cal. Dec. 9, 2014) (finding that at least one violation per week is presumptively reasonable

4

when the complaint claims a "regular or consistent practice" of violations).

Chavez claims that Pratt routinely failed to provide class members with meal and rest periods. Compl. ¶¶ 58, 66. The complaint does not describe a specific rate of missed meal or rest periods but alleges a "pattern or practice" of such violations. *Id.* To calculate the amount in controversy for missed meal and rest periods, Pratt estimated a 20% violation rate (or, a once per week failure per employee to provide each a meal period and a rest period). Dkt. No. 1 at 10. This rate results in $454,784 in premiums for hourly non-exempt employees and $140,122 for non-exempt temporary workers for each of these violations, totaling $594,906 each for meal and rest period violations, or $1,189,812. *Id*.

Chavez argues that Pratt has not supported its 20% rate sufficiently, but in so doing essentially argues that Pratt should engage in a fact-specific inquiry into the heart of Chavez's claims. Dkt. No. 17 at 14 (criticizing Ms. Quintero's declaration for lacking "information regarding how frequently putative class members missed meal and rest periods, were offered late meal and rest periods, or were offered meal periods of a duration shorter than that required by law"). But Pratt is "not obligated to research, state, and prove" Chavez's claims. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 199, 1204–05 (E.D. Cal. 2008). Furthermore, Chavez's own time records indicate that he missed meal periods up to 96% of the time. *See* Quintero Decl., Ex. A (showing that Chavez worked over six hours without a 30-minute meal break on 25 out of 26 workdays in October 2016).

The Court finds that Pratt's estimate of **$1,189,812** in controversy for meal and rest period violations is plausible and supported by a preponderance of the evidence.[1]

### 2. Unpaid Final Wages

Under California Labor Code § 203, an employer must pay daily wages for up to 30 days if it fails to pay all wages due within 72 hours of termination or resignation. This

---

[1] Pratt requested that the Court take judicial notice of a letter dated March 14, 2019 sent by plaintiff's counsel on behalf of a putative class member in order to determine the amount in controversy for meal and rest period violations. Dkt. No. 21. Because the Court finds that Pratt's estimate is plausible and supported by a preponderance of the evidence without relying on the existence or contents of the letter, the request for judicial notice is DENIED.

penalty accrues daily until the wages are paid. Cal. Lab. Code § 203(a).

The parties here seem to work with different factual bases in their calculations of unpaid final wages. In the complaint, Chavez includes as a general allegation that, by failing to pay minimum wage, overtime wages, and meal and rest break premiums, Pratt had a "pattern and practice" of failing to pay class members "the wages owed to them upon discharge or resignation." Compl. ¶ 37. By this logic, every class member who was denied minimum wage, overtime wages, or meal or rest breaks was due wages upon discharge or resignation. Pratt therefore uses a 100% violation rate in calculating the potential damages for this claim, assuming that any employee who departed Pratt during the relevant period is entitled to a penalty under § 203. Chavez, on the other hand, points out in his motion to remand that the complaint clearly states that he "and other class members *(but not all)* are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum." *Id*. ¶ 81 (emphasis added). Chavez proposes a 25% violation rate, arguing that the complaint does not allege that "every single putative class member who was terminated during the relevant time period was not paid within 72 hours of termination." Dkt. No. 23 at 4. Chavez provides no evidentiary support for his 25% rate. *Id*. Chavez also challenges Pratt's use of the 30 day maximum in its calculations.

The question here is not precisely how much the plaintiff might ultimately recover, but how much the complaint placed in controversy. *Korn*, 536 F. Supp. 2d at 1206. By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages. Moreover, because the complaint alleges that those wages have gone unpaid up through present, Pratt's use of the maximum 30 day penalty is reasonably supported by the evidence.

Pratt submitted proof that 85 non-exempt hourly employees paid $17 per hour departed during the relevant period, as did 714 temporary workers paid $10 per hour, for a

total of **$2,060,400**. Quintero Decl. ¶ 7. The Court finds that this amount in controversy for unpaid wage violations is plausible and supported by a preponderance of the evidence.

### 3. Wage Statement Penalties

Under California Labor Code § 226(e), an employer owes $50 per initial pay period and $100 for each subsequent pay period when it fails to provide complete and accurate wage statements to employees, with an aggregate cap of $4,000 per employee.

Here, Pratt issued 7,823 wage statements to the putative class of 528 current and formerly hourly employees and temporary workers within the statutory period. Quintero Decl. ¶ 4. This totals $755,900 in penalties. Again, Chavez points out that in the complaint he specifically alleged that "not all" members of the putative class received non-compliant wage statements. Compl. ¶¶ 84–85 (". . . failed to provide Plaintiff and other class members (but not all) with complete and accurate wage statements."). Chavez again proposes a 25% violation rate instead, with no evidentiary support. Dkt. No. 17 at 13.

Unlike the unpaid final wages claim above, this claim is not tied to any other claim(s) in the complaint in such a way as to justify a 100% violation rate. Pratt argues that courts have upheld assumed 100% violation rates when plaintiffs allege "uniform" wage statement violations. Dkt. No. 20 at 12; *see, e.g.*, *Duberry v. J. Crew Group, Inc.*, 2015 WL 45605018 at *3 (C.D. Cal. July 28, 2015) (noting that "courts have generally found the amount in controversy satisfied where a defendant assumes a 100% alleged violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate."). But here, Chavez did not allege "uniform" wage statement violations. The complaint is clear that fewer than 100% of putative class members allegedly received noncompliant wage statements, stating: "[a]s a pattern and practice, Defendants have intentionally and willfully failed to provide Plaintiff and other class members *(but not all)* with complete and accurate wage statements." Compl. ¶ 84 (emphasis added). As the Ninth Circuit plainly stated in *Ibarra*, "a 'pattern and practice' of doing something does not necessarily mean *always* doing something." *Ibarra*, 775 F.3d at 1198–99 (emphasis in original). Like

7

in that case, because the complaint does not allege a universal violation, Pratt "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Id*. at 1199. Pratt has not shown that it relied on a reasonable assumption. The Court finds that Pratt's 100% violation rate for wage statement violations is not plausible nor supported by the preponderance of the evidence.[2]

### 4. Unpaid Overtime

California Labor Code § 510 requires employers to pay non-exempt employees 1½ times their regular rate of pay for any hours worked over 8 in one day or 40 in one week. Chavez does not contest Pratt's calculation of **$446,098** in unpaid overtime based on a rate of 30 minutes of unpaid overtime per putative class member per week (26,752 workweeks for employees paid $17 per hour and 14,012 workweeks for temporary workers paid $10 per hour). Other courts have found this rate reasonable given allegations similar to Chavez's. *See, e.g., Jasso v. Money Mart Exp., Inc.*, No. 11-cv-5500-YGR, 2012 WL 699465, at *6 (N.D. Cal. Mar. 1, 2012). The Court finds that this amount in controversy for unpaid wage violations is plausible and supported by a preponderance of the evidence.

### 5. Minimum Wage Violations

California Labor Code sections 1194 and 1197 require an employer to pay minimum wage to all employees. An employee who is not paid minimum wage is entitled to recover the amount withheld plus additional penalties and liquidated damages. *Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1253 n.8 (2008). Here, Chavez's complaint as to minimum wage violations is quite vague—he alleges only that, as a pattern and practice, Pratt failed to pay the class members at least minimum wage for all hours worked. Compl. ¶ 36, 73. Practically speaking, this likely came in the form of the alleged

---

[2] Chavez does not put forward any evidence of a lower rate. In the motion to remand, Chavez selects 25% as the violation rate with no explanation. In his reply, Chavez states that "[c]ourts have found the use of a 25% violation rate reasonable when presented with allegations similar to Plaintiff's" but does not cite any decision from any court making such a finding. However, because the Court finds that Pratt's assumed rate is not plausible at the first step, it does not compare the evidence submitted by each party to decide which rate is supported by a preponderance of the evidence.

8

missed meal and rest periods and the alleged work over 8 hours per day and 40 per week. Pratt calculates 6 minutes per day or 30 minutes per week of unpaid minimum wage per employee, totaling $297,452 for hourly employees and temporary workers combined, or $594,904 when doubled to account for liquidated damages.

However, the unpaid work underlying this claim has already been accounted for in the claim for unpaid overtime. This unpaid time cannot be counted twice. Pratt's own evidence suggests that overtime, rather than minimum wage, is the more appropriate wage due. Ms. Quintera's declaration indicates that putative class members typically worked 8, 10, or 12 hour shifts at least five days per week. Quintero Decl. ¶ 3. "An employee cannot . . . be awarded double recovery. If an employee's total hours (including the unpaid time) exceeded the overtime threshold of 8 hours per day or 40 hours per week, then the employee would receive overtime damages, not minimum wage damages, for that time." *Vasquez v. Randstad US, L.P.*, 2018 WL 327451, No. 17-cv-04342-EMC, at *3 (N.D. Cal. Jan. 09, 2018). If Pratt employees worked through breaks or past their 8-plus-hour shifts without pay, they are due overtime pay for that time rather than minimum wage pay. Accordingly, the Court finds that Pratt's calculation of $594,904 for minimum wage violations is not plausible nor supported by the evidence.

### 6. Attorneys' Fees

The complaint seeks attorneys' fees. Compl. ¶¶ 8, 15, 26, 42, 46. These are properly included in the amount in controversy in determining jurisdiction under CAFA. *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007). For class actions, 25% of the common fund is a benchmark rate for attorney's fees in this Circuit. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Pratt has placed **$3,696,310** in controversy as described above. At a rate of 25%, **$924,077.50** is in controversy for attorneys' fees.

### 7. Punitive Damages

Punitive damages are generally part of the amount in controversy in a civil action. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). But "simply pointing out

9

that Plaintiff is seeking punitive damages without proffering any evidence regarding the amount is insufficient to establish that the potential punitive damage award will more likely than not increase the amount in controversy." *Geller v. Hai Ngoc Duong*, 2010 WL 5089018, *2 (S.D. Cal. Dec. 7, 2010); *see also Conrad Assoc. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998). To properly include punitive damages in an amount in controversy calculation, the party with the burden must "present evidence of a possible punitive damage award, usually in the form of punitive damage awards in factually analogous cases." *Petkevicius v. NBTY, Inc.*, 2017 WL 1113295, *9 (S.D. Cal. Mar. 24, 2017); *see, e.g.*, *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1127, 1232 (N.D. Cal. 2000) ("In order to establish probable punitive damages, a party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases with analogous facts."); *Killion v. AutoZone Stores Inc.*, 2011 WL 590292, *2 (C.D. Cal. Feb. 8, 2011) (calling the defendants' "inclusion of punitive damages in the calculation of the jurisdictional amount" both "speculative and unsupported" because defendants made "no attempt to analogize or explain" how other cases with punitive damage awards were "similar to the instant action"); *see also Hughes v. AutoZone Parts, Inc.*, 2017 WL 61917, *4 n.2 (C.D. Cal. Jan. 4, 2017) (remanding a case removed under CAFA in part because the defendant's recitation of plaintiff's prayer for punitive damages did not "move the needle" because the defendant had "not attempted to estimate" the total amount of punitive damages).

Pratt's notice of removal includes a reference to Chavez's claim for punitive damages. Dkt. No. 1 ¶ 45; Compl. ¶ 41. Pratt states that Chavez's claim for punitive damages "further increases the amount in controversy," but does not allege a specific amount of punitive damages in controversy beyond a historical precedent for "single-digit multipliers" of the amount of compensatory damages. *Id.* In the opposition to the motion to remand, Pratt again mentions punitive damages, noting that its estimate of the amount in controversy is conservative because it does not include any amount for punitive damages. Dkt. No. 20 at 21. But nowhere does Pratt estimate an amount of punitive damages in this

case or provide examples of punitive damage awards in factually analogous cases.

The Court finds that inclusion of punitive damages in the amount in controversy is not proper here.

### C. Jurisdictional Discovery

Pratt requests jurisdictional discovery if the Court does not find that the amount in controversy requirement has been met. The Court may grant such discovery at its discretion. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("[A] court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction . . . [t]his matter is generally left to the discretion of the trial court."); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 692 (9th Cir. 2006) (holding that the Senate Judiciary Committee Report issued ten days after CAFA's passage into law "confirms that any decision regarding jurisdictional discovery is a discretionary one, and is governed by existing principles regarding post-removal jurisdictional discovery, including the disinclination to entertain substantial, burdensome discovery on jurisdictional issues.") (internal quotations omitted).

The Court in its discretion denies Pratt's request for jurisdictional discovery.

### D. Conclusion

The total amount placed in controversy in Pratt's notice of removal and supporting evidence is **$4,620,387.50**:

| Claim | Amount in Controversy |
|---|---|
| Meal and Rest Period Penalties (1 each per employee per week) | $1,189,812 |
| Unpaid Final Wages (100% violation rate) | $2,060,400 |
| Unpaid Overtime (20 minutes per employee week) | $446,098 |
| Total before Attorney's Fees | $3,696,310 |
| Attorney's Fees (25%) | $924,077.50 |
| **Total** | **$4,620,387.50** |

As this is below the $5,000,000 threshold required for original federal court

11

jurisdiction under CAFA, the Court finds that it does not have jurisdiction to hear this case. Therefore, Chavez's motion to remand to the Superior Court of Monterey County is GRANTED. The Clerk of Court is ordered to remand this case promptly to the Superior Court.

### III. Motion to Compel Arbitration

Because the Court has resolved the jurisdictional question above and determined that it lacks jurisdiction over this case, the Court does not address the motion to compel arbitration at Dkt. No. 10.

**IT IS SO ORDERED.**

Dated: April 5, 2019  _____
NATHANAEL M. COUSINS
United States Magistrate Judge